IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

JUSTIN M. S.,[1]         )
                         )
    Plaintiff,            )
                         )
vs.                      ) Case No. 19-cv-00081-DGW[2]
                         )
COMMISSIONER of SOCIAL   )
SECURITY,                )
                         )
    Defendant.            )

## MEMORANDUM and ORDER

**WILKERSON, Magistrate Judge:**

In accordance with 42 U.S.C. § 405(g), plaintiff, represented by counsel, seeks judicial review of the final agency decision denying his application for Supplemental Security Income (SSI) benefits and Child Disability Benefits (CDB) pursuant to 42 U.S.C. § 423.[3]

## Procedural History

Plaintiff filed an application for SSI and CDB in March 2015, alleging disability as of September 5, 2011. After holding an evidentiary hearing, the Administrative Law Judge (ALJ) denied the application in January 2018. (Tr. 17-29). The Appeals Council denied review, and the decision of the ALJ became

---

[1] Plaintiff's full name will not be used in this Memorandum and Order due to privacy concerns. See, Fed. R. Civ. P. 5.2(c) and the Advisory Committee Notes thereto.

[2] This case was assigned to the undersigned for final disposition upon consent of the parties pursuant to 28 U.S.C. §636(c) and Administrative Order No. 240. See, Docs. 8, 9.

[3] For child disability benefits, a plaintiff can obtain benefits based on his parents' earnings records if he is 18 years or older and has a disability that began before the age of 22. 20 C.F.R. § 404.350.

Page **1** of **13**

the final agency decision. (Tr. 1). Administrative remedies have been exhausted and a timely complaint was filed in this Court.

## Issues Raised by Plaintiff

Plaintiff raises the following point:

> The ALJ erred by failing to account for moderate deficits of concentration, persistence, or pace in the RFC finding.

## Applicable Legal Standards

To qualify for Child Disability Benefits or SSI benefits, a claimant must be disabled pursuant to the Social Security Act. Under the Social Security Act, a person is disabled if she has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a). To determine whether a plaintiff is disabled, the ALJ considers the following five questions in order: (1) Is the plaintiff presently unemployed? (2) Does the plaintiff have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the plaintiff unable to perform her former occupation? and (5) Is the plaintiff unable to perform any other work? 20 C.F.R. § 416.920(a)(4).

An affirmative answer at either step 3 or step 5 leads to a finding that the plaintiff is disabled. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001). A negative answer at any step, other than at step 3, precludes a finding of disability.

*Ibid.* The plaintiff bears the burden of proof at steps 1–4. *Ibid.* Once the plaintiff shows an inability to perform past work, the burden then shifts to the Commissioner to show the plaintiff's ability to engage in other work existing in significant numbers in the national economy. *Ibid.*

This Court reviews the Commissioner's decision to ensure that the decision is supported by substantial evidence and that no mistakes of law were made. It is important to recognize that the scope of review is limited. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g). Thus, this Court must determine not whether plaintiff was, in fact, disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). This Court uses the Supreme Court's definition of substantial evidence, i.e., "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). However, while judicial review is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner. See, *Parker v. Astrue*, 597 F.3d 920, 921

(7th Cir. 2010), and cases cited therein.

## The Decision of the ALJ

The ALJ followed the five-step analytical framework described above. She determined that plaintiff had not worked at the level of substantial gainful activity since the alleged onset date. The ALJ found that plaintiff had severe impairments of major depressive disorder (MDD), generalized anxiety disorder (GAD), borderline personality disorder (BPD), and attention-deficit hyperactivity disorder (ADHD).

The ALJ found that plaintiff had the RFC to perform work at all exertional levels, "limited to work that involves only simple, routine and repetitive tasks and making simple work-related decisions." Additionally, plaintiff could "occasionally interact with coworkers and supervisors, but never interact with the general public." (Tr. 21). Based on the testimony of a vocational expert (VE), the ALJ concluded that plaintiff did not have any past relevant work, but he was able to do jobs which exist in significant numbers in the national economy.

## The Evidentiary Record

The Court has reviewed and considered the entire evidentiary record in formulating this Memorandum and Order. The following summary of the record is directed to the points raised by plaintiff.

1. **Agency Forms**

Plaintiff was born in 1995 and was 16 years old on the alleged onset date.

(Tr. 68). Plaintiff submitted a function report in June 2015 stating that he lived at home with family. He claimed that a previous car wreck caused him to have anxiety about driving, and he could not get to work. He also said that he had racing thoughts and trouble sleeping because of his anxiety and depression. (Tr. 205-206). Plaintiff reported anxiety in social settings and exhibited socially isolative behavior. (Tr. 206, 209).

Plaintiff claimed he had problems with memory, concentration, completing tasks, understanding, following instructions, handling stress, and handling changes in routine. (Tr. 210-211). He reported that he could maintain attention for 1 to 1 ½ hours, had trouble getting along with authority figures, and could not take criticism well. (Tr. 210). Plaintiff stated that he took care of a household pet, prepared simple meals, cleaned, laundered his clothes, mowed the lawn, and did other yard work. (Tr. 207). He said he shopped for groceries once a month and shopped for clothes twice a year. (Tr. 208).

Plaintiff's mother submitted a third-party function report in June 2015 in which she claimed plaintiff was reclusive, anti-social, and nervous. (Tr. 197, 200-201). She remarked that he engaged in self-mutilation, cutting his body and burning himself with cigarettes. (Tr. 203). She stated that he reacted aggressively towards authority figures, handled stress poorly, had trouble following instructions, and could only concentrate for 10 minutes at a time. (Tr. 202-203).

2. **Evidentiary Hearing**

At the evidentiary hearing, plaintiff stated that he could not work because of

"overall anxiety" that caused him to stay up at night before planned events and interactions. (Tr. 42-43). He reported seeing his psychiatrist, Dr. Scott Arbaugh, who prescribed him Adderall and paroxetine. (Tr. 44-45). Plaintiff stated that these medications were not very effective. (Tr. 45).

Plaintiff claimed he had poor memory, concentration, relationship skills, and anxiety around crowds of people. (Tr. 45). He denied preparing his own meals regularly and doing household chores, but did admit to mowing the lawn a few times a year. (Tr. 47-48). He stated that he didn't think he had been inside a store since filing his disability claims in March 2015. (Tr. 49).

The ALJ presented a hypothetical which corresponded to the RFC assessment:

> I'd like you to assume a hypothetical individual of the claimant's age, education with no past jobs. Further assume the individual is limited to simple, routine and repetitive tasks, limited to simple work related decisions. Can interact occasionally with supervisors and coworkers and never with the public. Can the hypothetical individual perform any work in the national economy?

(Tr. 54-55). The VE stated that this person could perform work in the national economy and suggested three jobs at the medium exertion level. The ALJ then stated, "I'd like you to assume the individual would be absent from work two days per month. Can the hypothetical individual perform any work in the national economy?" The VE answered, "[n]o." (Tr. 55).

### 3. Medical Records

Around 2011, plaintiff, a freshman in high school, started declining

academically and missing school, leading to psychological and psychiatric intervention. Plaintiff saw his family doctor, Dr. Michael Klein, in April of that year, who found that plaintiff was depressed, but deferred treatment to plaintiff's psychologist. At the time, plaintiff was taking Celexa. (Tr. 304).

In April 2012, plaintiff saw Dr. Klein again. Dr. Klein referred plaintiff to a child psychologist in Granite City, Illinois. At the time, plaintiff was taking Lexapro and Adderall. (Tr. 304).

In July 2012, plaintiff saw Dr. Karl Gunderson, a child and adolescent psychiatrist. He diagnosed plaintiff with MDD. In his initial psychiatric evaluation, Dr. Gunderson noted that plaintiff used marijuana daily and had plans to cut his wrists. Plaintiff also reported that he stopped taking his Lexapro and Adderall. (Tr. 300-301).

In July 2014, plaintiff began seeing psychiatrist Dr. Scott Arbaugh. Dr. Arbaugh diagnosed plaintiff with ADHD, MDD, and GAD. (Tr. 391-392). Throughout his notes in 2014, 2015, and 2017, Dr. Arbaugh described plaintiff's concentration as poor. (Tr. 378, 380, 382, 384, 386, 388, 391). He also further noted that plaintiff claimed he was no longer using illicit drugs. (Tr. 378, 380, 382, 384, 386).

In February 2015, plaintiff visited the emergency room and psych unit at Christian Hospital in St. Louis, Missouri. Plaintiff had a break up with his girlfriend and, in response, punched a mirror and hit his head against a wall after getting drunk and smoking marijuana. Plaintiff received stiches in his hand and

then transferred to a psych unit for treatment. (Tr. 334, 336).

In July 2015, plaintiff underwent a psychological evaluation with Dr. Stephen Vincent, a clinical psychologist. Plaintiff reported during the evaluation that he had trouble with concentration and making decisions. (Tr. 347). In the "TEST RESULTS" section of the psychological evaluation, Dr. Vincent described plaintiff as "slow and deliberate" with "[s]lowed reaction time. (Tr. 348). In the "SUMMARY AND CONCLUSIONS" section, he remarked that plaintiff had a history of multiple psychiatric hospitalizations for self-abusive behavior and episodes of decompensation and deterioration from his psychological disorders. Dr. Vincent diagnosed plaintiff with Bipolar Disorder, GAD, Panic Disorder, and BPD. (Tr. 349).

### 4. State Agency Consultants' RFC Assessments

In August 2015, acting as a state agency consultant, Dr. Robert Cottone assessed plaintiff's mental RFC based on a review of the file materials. He found that plaintiff had moderate limitations in the areas of maintaining attention and concentration for extended periods; sustaining an ordinary routine without special supervision; working in coordination with or in proximity to others without being distracted by them; and completing a normal workday and workweek without interruptions from psychologically based symptoms and performing at a consistent pace without an unreasonable number and length of rest periods. Dr. Cottone also found that plaintiff had marked limitations in understanding, remembering, and carrying out detailed instructions. (Tr. 64-65). In December 2015, acting as a

state agency consultant, Dr. Tin assessed plaintiff's mental RFC based on a review of the file materials and largely agreed with Dr. Cottone's findings. (Tr. 90-91).

## **Analysis**

Plaintiff's argument centers on the accusation that the ALJ failed to account for his moderate deficit in concentration in his RFC finding. Plaintiff argues that it was not adequate to limit him to simple, routine, repetitive tasks with only occasional interaction with coworkers and supervisors and no interaction with the public. Indeed, the ALJ's RFC assessment and the hypothetical question posed to the VE must both incorporate all of the limitations that are supported by the record. *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014). This is a well-established rule. See, *Stewart v. Astrue*, 561 F.3d 679, 684 (7th Cir. 2009) (collecting cases). If the ALJ finds that a plaintiff has a moderate limitation in maintaining concentration, persistence or pace, that limitation must be accounted for in the hypothetical question posed to the VE; in most cases, limiting the plaintiff to simple, repetitive tasks or to unskilled work is not sufficient to account for moderate concentration difficulties. *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 620 (7th Cir. 2010).

Plaintiff's argument finds support in the Seventh Circuit's caselaw, which "emphasizes that both the hypothetical posed to the VE and the ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the medical record,' including even moderate limitations in concentration, persistence, or pace." *Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019) (quoting *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015)). Here, the ALJ recognize plaintiff's

moderate limitations with concentration. (Tr. 21). Although this was the ALJ's finding at step three, which is not intended to be an RFC assessment, the ALJ was still required to provide a more detailed assessment of plaintiff's RFC for use at steps four and five.

In connection with the step four analysis, the ALJ again referenced plaintiff's memory and concentration. However, the ALJ did not further articulate how plaintiff's functioning was impacted, such as whether he would be able to maintain attention and concentration for extended periods, or perform at a consistent pace without an unreasonable number and length of rest periods. Instead, in both the RFC and the hypothetical to the VE, the ALJ limited plaintiff to simple, routine, repetitive tasks and making simple work-related decisions. It is not clear whether the ALJ intended these limitations to be an accommodation for plaintiff's moderate limitation in concentration.

On appeal, the Commissioner takes the position that these restrictions adequately incorporated all the plaintiff's limitations because the ALJ cited evidence that suggested plaintiff could perform simple tasks and his subjective symptom allegations were not supported by the record. In particular, the ALJ described plaintiff's performance of household chores, cooking meals, and doing yardwork. But "observing that a person can perform simple and repetitive tasks says nothing about whether the individual can do so on a sustained basis, including, for example, over the course of a standard eight-hour work shift." *Crump,* 932 F.3d at 570. This statement is as true here as it was in *Crump*. None

of the activities the ALJ cited were performed on a sustained basis, much less over the course of eight hours. Some, according to the plaintiff, were not even fully completed.

Moreover, according 29 C.F.R. § 404.1520, describing tasks as "simple, routine, and repetitive" refers to "unskilled work" that can be learned by demonstration in less than thirty days, which is unrelated to whether a person with limitations in concentration, persistence, and pace "can perform such work." *Varga*, 794 F.3d at 814; see also *O'Connor-Spinner*, 627 F.3d at 620 ("The ability to stick with a given task over a sustained period is not the same as the ability to learn how to do tasks of a given complexity."). The ALJ's decision does not provide a logical bridge between a finding that plaintiff had a moderate concentration deficit and an RFC and hypothetical to the VE that addresses only the time it takes to learn a task.

Adding the limitation for occasional changes in a routine work setting does not, as Commissioner argues, distinguish this case from others that the Seventh Circuit has remanded. See *Moreno v. Berryhill*, 882 F.3d 722, 730 (7th Cir. 2018) (finding that hypothetical to VE for individual who "can understand, remember, and carry out simple work instructions," can "exercise simple work place judgments," is "limited to routine work," and can have "no more than occasional changes in the work setting . . . did not account explicitly for [claimant's] moderate limitations in concentration, persistence, and pace"); *Varga*, 794 F.3d at 815 ("'Few if any work place changes' with limited 'interaction with coworkers or supervisors'

deals largely with workplace adaptation, rather than concentration, pace, or persistence.")

What is more, while the ALJ acknowledged plaintiff's moderate limitation in concentration, she also stated that the "[t]he medical treatment notes do not document any medical observations, by any treating psychiatrist or psychologist, of significant abnormalities or deficits with the respect to the claimant's . . . concentration . . . ." (Tr. 27). The medical records of Dr. Vincent, and particularly Dr. Arbaugh, mention plaintiff's concentration deficit several times. So do those of both state agency medical examiners attached to this case.

The lack of evidentiary support in this case requires remand. "If a decision 'lacks evidentiary support or is so poorly articulated as to prevent meaningful review,' a remand is required." *Kastner v. Astrue*, 697 F.3d 642, 646 (7th Cir. 2012) (internal citation omitted).

The Court wishes to stress that this Memorandum and Order should not be construed as an indication that the Court believes that plaintiff was disabled during the relevant period, or that he should be awarded benefits. On the contrary, the Court has not formed any opinions in that regard and leaves those issues to be determined by the Commissioner after further proceedings.

## Conclusion

The Commissioner's final decision denying plaintiff's application for social security disability benefits is **REVERSED** and **REMANDED** to the Commissioner

for rehearing and reconsideration of the evidence, pursuant to sentence four of 42 U.S.C. §405(g).

The Clerk of Court is directed to enter judgment in favor of plaintiff.
**IT IS SO ORDERED.**

DATE:   September 9, 2019.

**DONALD G. WILKERSON
UNITED STATES MAGISTRATE JUDGE**